**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| v. : | **Crim. No.: 05-246-05 (RMC)** |
| : | |
| **PEDRO HERNANDEZ-CARLON** : | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

**FACTUAL/ PROCEDURAL BACKGROUND**

1., Operation Card Shark, was an investigation into persons involved in the illegal manufacture and distribution of counterfeit identity documents in the area of the 1600 to 1800 blocks of Columbia Road NW. During July 2005, an ICE agent had observed a Dodge Shadow vehicle driven by a Hispanic male, later identified as the defendant, making deliveries of documents back and forth between the area of the 1700 block of Columbia Road NW and a document mill located at 526 Tuckerman Street NW on several occasions. At the time of Mr. Hernandez-Carlon's August 2, 2005 arrest at his residence in Hyattsville, MD, the police located the same Dodge vehicle parked there, conducted a search of the vehicle, and seized therein a notebook that contained a detailed list of the days of the week and of the persons involved in the manufacturing of the documents. (On September 1, 2005, while in he was in I.C. E. custody, and

after the defendant was advised of his rights to remain silent and to appointed counsel, he also provided a sworn written statement to the agents. In his statement, he acknowledged his role in the conspiracy, and that he had brought orders for false documents from Columbia Road to Tuckerman, and delivered the finished documents back again, about ten times.)

2. On the same day that he was taken into custody by ICE, the defendant signed a stipulated request for removal. On August 12, 2005 his Deportation Order was signed by an Immigration Judge. On September 22, 2005, the defendant was indicted for the instant conspiracy and related charges, and a Magistrate Judge issued a warrant for his arrest. The arrest warrant was not executed until October 5, 2005, and the defendant was formally held without bond thereafter. After a series of hearings, the Court denied the defendants' Motions to Dismiss On Speedy Trial Grounds. On August 30, 2006, Mr. Hernandez-Carlon entered a plea of guilty to Count One pursuant to a detailed plea agreement with the Government.

**U.S.S.G.  CALCULATIONS:**

3. The base offense level for the defendant's criminal conduct is 11; 9 additional levels are added, as the defendant acknowledged in his plea agreement and the proffer of facts that the offense involved more than 100 documents, resulting in a total offense level of 20. USSG Sect. 2 L2.1 (a); 2L 2.1(2)(C). However, as acknowledged by the Government in the plea agreement, Mr. Hernandez-Carlon played a minor role in the offense, and the offense level is therefore reduced by two levels. USSG Sect. 3B1.2(b). The offense level is also adjusted downward three additional levels based upon his acceptance of responsibility and timely notification to the Government of his intention to plead guilty, USSG 3E1.1(b), resulting in a total offense level of 15. The defendant has no prior criminal history. As such, the defendant agrees that the PSI

Report correctly calculates his sentencing range at Offense Level 15, Criminal History Category I, i.e. 18-24 months.

**MR. HERNANDEZ-CARLON'S HISTORY /CHARACTERISTICS :**

    4.  Pedro Hernandez Carlon is a 23 year-old man who has had no prior contacts with the criminal justice system either in the United States or in his country of origin. While he did not complete high school, he later furthered his education at the Instituto Technologia de Computacion in Mexico City, receiving a diploma as a computer technician. After being unable to find work in his chosen field of computer maintenance, he took various jobs, including as an assistant at a motel, in which position his duties included maintaining the guests' rooms and providing room service.  He also worked for several years as a taxi driver.

    5.  The defendant was married at the end of 2004. He and his wife have an infant daughter.  Mr. Hernandez-Carlon is the sole provider for his family. (His wife and daughter are staying with his wife's family until his return.)  In fact, his primary motivation for entering the United States was to obtain work here for short period of time, to accumulate savings and then return to his family. The defendant did find work here as a driver.  Unfortunately, shortly thereafter he became involved in delivering documents for other members of the conspiracy. At the time, he did not realize the serious nature of his misconduct.

    6.  The defendant has consistently demonstrated his acceptance of responsibility for his actions from the time of his arrest.  Mr. Hernandez Carlon was arrested about four months after his entry into the United States. He had not previously entered the United States illegally. On the very day of his arrest, he agreed to waive deportation proceedings and to be returned to his

country. Shortly thereafter, before being charged criminally, he provided a formal statement to the investigating agent. In his statement, he accurately described his role in the false document scheme, and provided truthful responses to the agents' questions. Since his indictment and appointment of counsel, the defendant has consistently expressed his desire to acknowledge his guilt, and to enter into an agreement with the prosecution. Accordingly, early in the proceedings, counsel advised the prosecutor in this case that his client wished only to determine whether the manner of his arrest and detention violated his speedy trial rights, but would not challenge the substantive charges once the Court ruled on the speedy trial motion. As such, a plea agreement with the government, which had been agreed on in principle earlier in the case, was formalized shortly after the Court's ruling. The defendant further showed his acceptance of responsibility by agreeing not to challenge that the number of documents involved in his offense was more than 100. (The defendant's plea also enabled the government to resolve the charges against the other "wired" codefendants who had also accepted conditional plea offers.)

     7. In sum, the defendant was a law-abiding and hard working young, Mexican citizen prior to his involvement in this case. His arrest for his role in the document scheme has awakened him to the dangers of entering this country illegally, an action he is unlikely to repeat. His punishment has been harsh, as has been held for more than 13 months at the D.C. Jail. He has had great difficulty there as a Spanish-speaking inmate, as there are virtually no persons in positions of authority for him to communicate with at the Jail. As such, he has been isolated, and unable to participate in any work details, or in any of the very limited programs available there. The Court, recognizing that Mr. Hernandez-Carlon would be in a less isolated and more rehabilitative environment at the Correctional Treatment Facility, ordered him placed there

several times, the last time being after his plea on August 30, 2006. However the Department of Corrections has apparently neglected the Court's orders, as the defendant remains at the Jail.

**DEPARTURES AND RELATED SENTENCING ISSUES**

8. The PSI Report notes, see Paragraphs 70-72, that Mr. Hernandez Carlon's status as a deportable alien deprives him of the benefit of 18 U.S.C. Sect. 3624(c), which allows prisoners to enter into pre-lease programs up to six months before the end of their sentences. See, Lartey v. Department of Justice, 790 F.Supp. 130 (D.C.L.A 1992). As such, and also based upon the harsh conditions of his confinement, the defendant is an especially appropriate candidate for a downward departure pursuant to Smith v. United States, 27 F. 3d 649 ( D.C. Cir. 1994). In Smith, the D.C. Circuit Court recognized that a downward departure from the recommended sentencing range may be appropriate if a defendant's status as a deportable alien is likely to cause a fortuitous increase in the severity of his confinement. Mr. Hernandez Carlon has not been, nor will he before the completion of any sentence imposed, be afforded the opportunity to participate in any rehabilitative programs. Rather, as detailed above, in direct contravention of the Court's orders that he be placed at CTF, the Department of Corrections has continuously housed him at the D.C. Jail, thus assuring that he has served his time without access to any programs and while in a harsh and isolated environment. Neither of course will he be afforded release to a halfway house or permitted to serve his time under conditions that will prepare him for re-entry into the community.

9. The defendant should also receive credit for the time that he was held in ICE custody after his initial arrest on August 2, 2005 but before his arraignment and formal detention on the

instant indictment. While the speedy trial issue was fully litigated and the motion to dismiss denied, the hearings clearly established that the defendant's detention by ICE in a nearby facility in Northern Virginia facilitated the government's ability to finalize its criminal investigation. For example, on September 1, 2005, the defendant provided a full statement to the ICE investigator who led the criminal and administrative investigations, thus significantly strengthening the government's case against him, and resulting in his indictment on September 26, 2005. 18 U.S.C. 3585 (b) provides that " A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences --(1) as a result of the offense for which the sentence was imposed. "  As detailed herein, it was the defendant's involvement in the charged criminal activity that resulted in his detention at the ICE facility in advance of his presentment in this court. As such, it is appropriate that the Court reduce the defendant's guideline sentence by two months to account for his time at the ICE facility.

    10.  Alternatively, as urged by codefendant Gonzalez-Olvera in his Memorandum In Aid of Sentencing, the Court may accomplish the same result by informing the Bureau of Prisons (B.O.P.) that Mr. Hernandez-Carlon has been held in matters related to this case since August 2, 2005, and by making a recommendation to the B.O.P. that he be credited with his time served since that date. (Judicial recommendations however are not binding on B.O.P. and therefore the defendant, as argued above, would urge the Court to simply reduce his sentence by the two months in I.C.E. custody to assure this just result.)

- 7 -

**CONCLUSION:**

      Consistent with the Supreme Court's seminal sentencing ruling in <u>United States v. Booker</u> 125 S. Ct. 738 (2005), this Court must sentence a defendant based upon a wide variety of factors, and the sentencing guidelines are but one factor to be considered. The sentence should be sufficient but not greater than necessary to comply with the following purposes of sentencing as set forth by statute, 18 U.S.C. 3553 (a) (1), (a) (2):

- **(A) Seriousness of the Offense**—While serious, the offense did not involve violence nor is it otherwise characterized as a "dangerous" offense;

- **(B) Adequate Deterrence**—Certainly the 13-month detention of Mr. Hernandez-Carlon at the D.C. Jail is a sentence sufficient to deter others in the community, and even those outside of the country, from attempting to commit document fraud or any similar offenses in this country;

- **(C) To Protect the Public From Further Crimes of the Defendant**—The defendant is a first time offender who has demonstrated consistent remorse and acceptance of responsibility for his actions, and who has already been harshly punished. In addition, he will be deported upon completion of his sentence. It is therefore highly unlikely that he will commit any further crimes in the United States or elsewhere.

- **(D) To Provide the Defendant With Needed Correctional Treatment In The Most Efficient Manner**---As detailed, the defendant has not nor will he receive any rehabilitative treatment during his period of incarceration.

- 8 -

Therefore the most efficient manner of "providing treatment" would be to sentence him to time served, and thereby allow him to return to Mexico to work and to support his family. The B.O.P. would then be saved the expense of having to designate, transport and designate the defendant to a B.O.P. facility, only to then have to return him to an I.C.E. facility for deportation shortly thereafter.

Therefore, for the reasons stated herein, the defendant urges the Court to Sentence him to Time Served. Alternatively, the Court should sentence the defendant to a period of time not greater than the low end of the guideline range, 18 months, and recommend that the B.O.P credit him for the period of time that he was detained in I.C.E. custody as well the time that he was held in the custody of the Department of Corrections.

    Respectfully submitted,

_____
Mitchell M. Seltzer
Bar # 261933
717 D Street NW
Suite # 310
Washington, D.C. 20004
(202) 347-2333
Counsel for Pedro Hernandez-Carlon

## CERTIFICATE OF SERVICE

`     I hereby certify that a copy of the foregoing Memorandum was electronically delivered to A.U.S.A. Fred Yette, 555 Fourth Street, N.W., Washington, D.C. 20530, this <u>3d</u> day of November 2006.

_____<br>
Mitchell M. Seltzer